IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

```
------------------------------------
UNITED STATES OF AMERICA and        )
STATE OF OKLAHOMA, ex rel,          )
OKLAHOMA DEPARTMENT OF              )
ENVIRONMENTAL QUALITY, OKLAHOMA     )
DEPARTMENT OF WILDLIFE              )
CONSERVATION, AND OKLAHOMA          )
SECRETARY OF THE ENVIRONMENT        )
                                    )
            Plaintiffs,             )
                                    )
                                    )   Civil Action No. [_____]
       v.                           )
                                    )   CONSENT DECREE
                                    )
CITY OF OKMULGEE, OKLAHOMA          )
and OKMULGEE PUBLIC WORKS           )
AUTHORITY                           )
            Defendants.             )
------------------------------------
```

CIV 06-009-SH

# TABLE OF CONTENTS

I.      JURISDICTION AND VENUE . . . . . . . . . . . . . . 4

II.     APPLICABILITY . . . . . . . . . . . . . . . . . 4

III.    DEFINITIONS . . . . . . . . . . . . . . . . . . 6

IV.     CIVIL PENALTY . . . . . . . . . . . . . . . . 10

V.      COMPLIANCE REQUIREMENTS . . . . . . . . . . . . 11

VI.     REVIEW OF SUBMITTALS . . . . . . . . . . . . . 23

VII.    NATURAL RESOURCE DAMAGES . . . . . . . . . . . 24

VIII.   REPORTING REQUIREMENTS . . . . . . . . . . . . 26

IX.     STIPULATED PENALTIES . . . . . . . . . . . . . 29

X.      FORCE MAJEURE . . . . . . . . . . . . . . . . 36

XI.     DISPUTE RESOLUTION . . . . . . . . . . . . . . 38

XII.    INFORMATION COLLECTION AND RETENTION . . . . . . 45

XIII.   FAILURE OF COMPLIANCE . . . . . . . . . . . . 47

XIV.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . . . . 48

XV.     COSTS . . . . . . . . . . . . . . . . . . . . 53

XVI.    NOTICES . . . . . . . . . . . . . . . . . . . 54

XVII.   EFFECTIVE DATE . . . . . . . . . . . . . . . 56

XVIII.  RETENTION OF JURISDICTION . . . . . . . . . . . 56

XIX.    MODIFICATION . . . . . . . . . . . . . . . . 56

XX.     TERMINATION . . . . . . . . . . . . . . . . . 57

XXI.    CONTINGENT LIABILITY OF THE STATE OF OKLAHOMA . . . 59

XXII.   PUBLIC PARTICIPATION . . . . . . . . . . . . . 59

XXIII.    SIGNATORIES/SERVICE . . . . . . . . . . . . . . .   59

XXIV.     INTEGRATION/*[APPENDICES]*  . . . . . . . . . . . .   60

XXV.      FINAL JUDGMENT  . . . . . . . . . . . . . . . . .   61

XXVI.     APPENDICES  . . . . . . . . . . . . . . . . . . .   61

WHEREAS the City of Okmulgee, Oklahoma and the Okmulgee Public Works Authority (referred to herein collectively as "the City" or "Defendants") discharged and discharge pollutants into navigable waters of the United States and Waters of the State of Oklahoma from a publically-owned treatment works ("POTW") owned by the City of Okmulgee and operated by the Okmulgee Public Works Authority, pursuant to National Pollutant Discharge Elimination System ("NPDES") Permit No. OK0028134 (hereinafter "NPDES Permit"), effective on August 17, 1993, and OPDES Permit No. OK0028134 (hereinafter "OPDES Permit"), effective November 1, 2001;

WHEREAS Plaintiffs, United States of America, by the authority of the Attorney General of the United States and through its undersigned counsel, acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA") and the United States Department of the Interior ("DOI"), and the State of Oklahoma acting *ex relatione* through the Oklahoma Department of Environmental Quality ("ODEQ"), the Oklahoma Department of Wildlife Conservation ("ODWC"), and Miles Tolbert, Oklahoma Secretary of the Environment as Natural Resource Trustee, filed a Complaint against Defendants in this action seeking injunctive relief, Natural Resource Damages and civil penalties pursuant to Sections 309 and 311 of the Clean Water Act ("Act"), 33 U.S.C. §§ 1319 and

1321, Title 27A O.S. §§ 1-2-101, 1-3-101, 2-6-105, 2-6-201 et seq., and Title 29 O.S. § 7-401a.

WHEREAS the Complaint against Defendants alleges that Defendants violated Section 301 of the Act, 33 U.S.C. § 1311, and Title 27A O.S. §§ 2-6-105 and 2-6-201 et seq., by exceeding the effluent limits required by NPDES Permit No. OK0028134 and OPDES Permit No. OK0028134, by violating the operation and maintenance requirements of the NPDES and OPDES permits, and by having Sanitary Sewer Overflows of pollutants from its Collection System.

WHEREAS, Plaintiffs contend that a discharge(s) in August - September 2000 of effluent in excess of Permit limits for ammonia-nitrogen and other pollutants resulted in injury to habitat and fish in the Deep Fork River in the Deep Fork National Wildlife Refuge, to the resources under the jurisdiction of the DOI, the ODWC and the Oklahoma Secretary of the Environment in the Deep Fork River, and to the Deep Fork National Wildlife Refuge, and to Okmulgee Creek and the Deep Fork of the Canadian River.

WHEREAS, on November 23, 2002, EPA issued to the City of Okmulgee Administrative Order Docket No. CWA-06-2002-1201 which requires that the City of Okmlugee take appropriate measures to comply with the Act and its OPDES Permit and eliminate unpermitted discharges from

its POTW.

WHEREAS, the ODEQ Division of Water Quality and the City of Okmulgee executed Consent Order, Case No. 01-038, on June 20, 2001, and executed Addendum, Case No. 01-038(A) on February 2, 2002, which require the City of Okmlugee to take appropriate measures to comply with 27A O.S. § 2-6-205(A) and eliminate unlawful discharges of pollutants (Sanitary Sewer Overflows) from its Collection System.

WHEREAS Defendants do not admit any liability arising out of the transactions or occurrences alleged in the Complaint; and

WHEREAS the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest,

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

# I.  JURISDICTION AND VENUE

1.  This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, 1367(a) and 1355, and Sections 309(b) and 311(f)of the Act, 33 U.S.C. §§ 1319(b) and 1321(f), and over the Parties.  Venue lies in this District pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391 (b) and 1395(a), because Defendants reside and are located in this judicial district, and the violations alleged in the Complaint are alleged to have occurred in, and Defendants conduct business in, this judicial district.  For purposes of this Decree, Defendants do not contest the Court's jurisdiction over this action or over Defendants and **do** not contest venue in this judicial district.

2.  For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Sections 301, 309 and 311 of the Act, 33 U.S.C.  §§ 1311, 1319 and 1321, 1321, Sections 1-3-101 (B) and (H), 2-6-105 and 2-6-201 et seq. of Title 27A, and Sections 7-401 and 1-401a of Title 29 of the Oklahoma Statutes.

# II.  APPLICABILITY

3.  The obligations of this Consent Decree apply to and are binding upon the United States, the State of Oklahoma acting *ex relatione* through the ODEQ, the ODWC, and the Oklahoma

Secretary of the Environment, and upon Defendants, their agents, successors, and assigns.

4.   At least thirty (30) days prior to transferring ownership or operation of the ("POTW") or the Collection System to any other person, Defendants shall provide a copy of this Consent Decree to each prospective successor owner or operator and shall simultaneously verify such by a written notice to EPA Region VI, the United States Attorney for the Eastern District of Oklahoma, the United States Department of Justice and the ODEQ (on behalf of the State of Oklahoma) in accordance with Section XVI of this Decree (Notices).  Any such transfer must be conditioned upon the transferee's agreement to undertake the obligations required by this Decree, and no such transfer shall relieve Defendants of their obligation to ensure that the terms of the Decree are implemented.

5.   Defendants shall provide a copy of this Consent Decree to all officials, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.   In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its

officials, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. <u>DEFINITIONS</u>

7. Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in the Act or in regulations promulgated pursuant to the Act, shall have the meaning assigned to them in the Act and such regulations. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a. "Act" shall mean the Clean Water Act, as amended, 33 U.S.C. § 1251 et seq.

b. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. 601 et seq.

c. "City" shall mean the City of Okmulgee and the Okmulgee Public Works Authority;

d. "Complaint" shall mean the complaint filed by the United States, the State of Oklahoma acting *ex relatione* through the ODEQ, the ODWC and the Oklahoma Secretary of the Environment in this action;

e. "Consent Decree" shall mean this Decree and all Appendices attached hereto (listed in Section XXVI);

f. "Collection System" shall mean the sanitary sewage collection and transmission system (including, but not

limited to, all pipes, force mains, gravity sewer lines, lift stations, pump stations, manholes, and appurtenances thereto) owned or operated by the City that serves the POTW.

g. "Day" shall mean a calendar day unless expressly stated to be a working day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day;

h. "Defendants" shall mean the City of Okmulgee, Oklahoma and the Okmulgee Public Works Authority;

i. "DOI" shall mean the United States Department of the Interior;

j. "Effective Date" shall mean the date of entry of this Consent Decree by the Court after satisfaction of the public notice and comment procedures set forth in Section XVIII of this Consent Decree;

k. "Grab sample" shall consist an individual effluent sample collected in less than 15 minutes.

l. "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States;

m. "Interest" shall mean interest accruing on a sum calculated in the manner provided by 28 U.S.C. § 1961.

n.   "Natural Resource Damages" shall mean natural resources damaged or destroyed as defined in Section 311(f) of the Clean Water Act, 33 U.S.C. § 1321(f), and Section 101(16) of the Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), 42 U.S.C. § 9601(16), including the reasonable costs of assessing such damages or destruction.

o.   "ODEQ" shall mean the Oklahoma Department of Environmental Quality and any successor departments or agencies of the State of Oklahoma.

p.   "ODWC" shall mean the Oklahoma Department of Wildlife Conservation and any successor departments or agencies of the State of Oklahoma.

q.   "Oklahoma Secretary of the Environment" shall mean the duly appointed Oklahoma Secretary of the Environment or successor cabinet position, acting as the Natural Resources Trustee for the State of Oklahoma pursuant to Section 1-2-101 of Title 27A of the Oklahoma Statutes.

r.   "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

s.   "Parties" shall mean Defendants, the United States, and the State of Oklahoma acting *ex relatione* through, the ODEQ, the ODWC, the Oklahoma Secretary of the Environment;

t.   "Permit" shall mean OPDES Permit No. OK0028134;

u.   "Plaintiffs" shall mean the United States and the State of Oklahoma, acting *ex relatione* through the ODEQ, the ODWC, and the Oklahoma Secretary of the Environment.

v.   "State of Oklahoma" shall mean the State of Oklahoma acting *ex relatione* through the ODEQ, the ODWC and Oklahoma Secretary of the Environment.

w.   "POTW" shall mean the publicly owned treatment works that is owned and operated by Defendants and that is located at 1700 South Oklahoma, Okmulgee, Oklahoma.

x.   Sanitary Sewer Overflow or "SSO" shall mean any overflow, spill or release of wastewater from a Collection System that occurs prior to the headworks of the POTW.

y.   "Section" shall mean a portion of this Decree identified by a roman numeral;

z.   "Twelve (12)-hour composite sample" shall consist of twelve (12) effluent portions collected no closer together than one hour and composited according to flow. The daily sampling intervals shall include the highest flow periods.

aa.   "United States" shall mean the United States of America, acting on behalf of EPA and the United States Department of the Interior;

bb. "Unauthorized Discharge" means any discharge of wastewater from the POTW via any point other than the outfall specified in NPDES Permit No. OK0028134 or OPDES Permit No. OK0028134, as applicable, regardless of whether such discharge reaches navigable waters. The term does not include discharges that do not violate the Act or regulations enacted pursuant to the Act or applicable State laws and regulations.

## IV. CIVIL PENALTY

8. Federal Civil Penalty: Within 30 days after the Effective Date of this Consent Decree, Defendants shall pay the sum of $235,000.00 as a civil penalty, together with Interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with instructions to be provided to Defendants following lodging of the Consent Decree by the Financial Litigation Unit of the U.S. Attorney's Office for the Eastern District of Oklahoma. At the time of payment, Defendants shall simultaneously send written notice of payment identifying the payment as a civil penalty and a copy of any transmittal documentation (which should reference DOJ case number *90-5-1-1-07445* and the civil action number of this case) to the United States in accordance with Section XVI of this Decree (Notices).

9.    State of Oklahoma Civil Penalty:  No later than 30 days after the Effective Date of this Consent Decree, Defendants shall pay the sum of $235,000 to the ODEQ as a civil penalty in accordance with Paragraph 10 below.

10.    All payments made to the ODEQ under this Consent Decree shall be made by certified cashier's check bearing the ODEQ Facility Number S-20719, the ODEQ Case No. 01-038, and made payable to the Oklahoma Department of Environmental Quality.  The check shall be mailed to:

```
Accounts Receivable
Financial and Human Resources Management
Department of Environmental Quality
P.O. Box 2036
Oklahoma City, Oklahoma 73101-2036
```

## V. CORRECTIVE ACTION FOR POTW AND COLLECTION SYSTEM

11.    It is the express purpose of the Parties in executing this Consent Decree that Defendants shall perform all measures necessary to achieve and maintain compliance with the Act, the regulations promulgated thereunder, all terms of the OPDES Permit No. OK0028134, and applicable state law.

### PUBLICALLY OWNED TREATMENT WORKS UPGRADE

12.    Defendants shall upgrade its POTW in order to achieve compliance with the Act, its implementing regulations, its OPDES Permit and applicable state law.  Specific POTW upgrade requirements of this Decree are set forth in the July 2002 Addendum No. 3 to the Comprehensive Evaluation Wastewater

Treatment Plant, Okmulgee Public Works Authority, Okmulgee, Oklahoma, **as revised November 4, 2005,** (hereinafter "Addendum 3") which is attached and incorporated by reference as Appendix A to this Consent Decree. Defendants are currently addressing deficiencies in its POTW pursuant to Addendum 3. Defendants shall complete the following upgrades of its POTW:

a.     Final Upgrades: Defendants shall implement the Final Upgrades specified in Section 5.3A.4 of Addendum 3 according to the following construction schedule and as specified in Figure 5-11A of Addendum 3:

| POTW FINAL UPGRADES SCHEDULE | |
|---|---|
| Requirement | Deadline |
| Advertise for Bids | **February 1, 2006** |
| Begin Construction | **May 1, 2006** |
| Complete Construction | **October 1, 2008** |

b.     STAFFING REQUIREMENTS. Defendants shall provide qualified personnel at the POTW to manage and operate the facility on a full-time basis, twenty-four (24) hours a day, seven (7) days a week.

c.     EFFLUENT MONITORING REQUIREMENTS. Defendants shall monitor and sample the effluent identified in the OPDES Permit No. OK0028134 and shall report the sampling results as specified in said Permit. In regard to Carbonaceous Biochemical Oxygen Demand (CBOD5), Total Suspended Solids (TSS), and Ammonia (NH3-

N), Defendants shall sample five (5) days a week with twelve (12)-hour composite samples. In regard to Fecal Coliform, Defendants shall sample five (5) days a week with grab samples. The monitoring of the other effluent parameters addressed in the OPDES Permit and not listed above, such as metals and Dissolved Oxygen (DO), shall be as specified in the current OPDES Permit. Upon the re-issuance of the OPDES permit by ODEQ, the frequency of and type of sampling shall be determined by the reissued ODEQ permit.

d. Defendants shall not be excused from its violations of the Act, state law, or its OPDES Permit discharge limits regardless of whether CP Kelco continues to discharge wastewater to Defendants' POTW and regardless of whether any such violation is attributable to the discharge of CP Kelco. In the event effluent discharges from the POTW violate the Act, state law, or the OPDES Permit, it shall be no defense for Defendants that CP Kelco discharged wastewater to the POTW.

13. <u>Certification of Completion of Construction of POTW Upgrades</u>. Defendants shall provide notice and certification of completion, signed by the City of Okmulgee Manager, to EPA and ODEQ when Defendants assert that they have completed the Final Upgrades requirements of Addendum 3.

14. Within 90 days after receipt of notice of completion, EPA and ODEQ will notify Defendants whether

Defendants have completed the applicable upgrade requirements of Addendum 3, which are reflected previously in the approved plans and specifications titled "Final Improvements to Wastewater Treatment Plant." If EPA and ODEQ determine that the applicable construction requirements are incomplete, then, within 30 days of Plaintiffs' written request, Defendants will notify EPA and ODEQ in writing of an expedited schedule for completion and take the appropriate steps to complete any applicable requirements that remain.

15. EPA and ODEQ will monitor Defendants' DMRs during the 12-month period following completion of the Final Improvements in Addendum 3 to determine sustained compliance with this Consent Decree, the Act, state law, and the OPDES Permit. If Defendants continue to discharge effluent in violation of Permit limits during this period, then, within 30 days of EPA and ODEQ's written request, Defendants shall propose additional compliance measures to eliminate the exceedances, shall submit a schedule for the additional measures and, subject to EPA and ODEQ's approval, shall implement the additional measures accordingly.

<u>COLLECTION SYSTEM REMEDIAL PROGRAM</u>

16. Defendants are currently addressing the deficiencies in its Collection System pursuant to an ODEQ Consent Order ("CO"), Case No. 01-038, dated June 20, 2001, and an

Addendum, Case No. 01-038(A), issued on February 2, 2002. Pursuant to the CO, Defendants are rehabilitating and modifying its Collection System as specified in the CO and the Supplemental Sewer System Evaluation Survey ("SSES") that was submitted by Defendants to ODEQ and approved by ODEQ on March 4, 2002. The SSES is attached and incorporated herein as Appendix B. Upon entry of this Consent Decree, the CO will be closed and the requirements therein will be superseded by this Consent Decree.

17. Defendants shall eliminate sanitary sewer overflows ("SSOs") from the Collection System through development and implementation of the measures set forth in the SSES and below, and any other necessary measures, and shall comply with the following schedule regarding the Collection System Remedial Program. Rehabilitation/modification to the Collection System shall include repair and/or replacement of the Collection System lines and manholes and shall include the upgrade or replacement of the interceptor serving the 600 Block of 8th Street.

| COLLECTION SYSTEM REMEDIAL PROGRAM | |
|---|---|
| A. Submit plans and specifications with construction permit application to ODEQ to upgrade or relieve interceptor lines including the 600 block of 8th Street. | Completed. |

| B. Begin construction of the interceptor improvements including the 600 block of 8th Street. | January 1, 2006 |
|---|---|
| C. Complete construction of the interceptor improvements including the 600 block of 8th Street. | July 1, 2007 |

18. Defendants shall comply with applicable requirements of the Act, state law, and OPDES Permit No. OK0028134 with respect to the POTW and the Collection System.

19. <u>Certification of Completion of Construction of Upgrades to Collection System</u>. Defendants shall provide notice and certification of completion, signed by the City of Okmulgee Manager, to EPA and ODEQ when Defendants assert that they have completed the requirements of the SSES and Paragraph 17 above, or within 30 days of entry of this Consent Decree, whichever is later.

20. After receipt of the notice of completion, EPA and ODEQ will determine whether Defendants have completed the SSES in accordance with the provisions of the SSES. Upon review, EPA and ODEQ will notify Defendants in writing whether Defendants have completed the applicable requirements of the SSES or whether there are additional requirements of the SSES that remain incomplete. If EPA and ODEQ determine that the SSES upgrades are

incomplete, then, within 30 days of EPA and ODEQ's written request, Defendants will notify EPA and ODEQ in writing of an expedited schedule for completion and take the appropriate steps to complete any applicable requirements that remain under the SSES.

21.  Following completion of the requirements of the SSES and Paragraph 17 above, EPA and ODEQ will monitor Defendants' SSO reports for a 12-month period to determine sustained compliance with this Consent Decree, the Act, state law and the OPDES Permit.  If Defendants continue to experience SSOs in violation of Permit limits during this period, then, within 30 days of EPA and ODEQ's written request, Defendants shall propose additional compliance measures to eliminate the exceedances, shall submit a schedule for the additional measures and, subject to EPA and ODEQ approval, shall implement the additional measures accordingly.

22.  <u>Emergency Response Plan</u>

a.  The City shall develop and implement an Emergency Response Plan to adequately protect the health and welfare of persons and/or the environment in the event of any SSOs.

b.  Within one hundred eighty (180) days after the Date of Entry of this Consent Decree, the City shall provide to EPA and ODEQ for approval an Emergency Response Plan that addresses the actions to be taken by the City in the event of SSOs from the

Collection System or bypasses at the POTW. The Emergency

Response Plan shall include but not be limited to:

i.   A detailed description of the actions the City will
undertake to immediately provide notice to the public
(through the local news media or other means including signs
or barricades to restrict access) of the SSO from the
Collection System;

ii.  A detailed description of the actions the City will
undertake to provide notice to appropriate federal, state or
local agencies/authorities;

iii. A detailed plan (including the development of response
standard operating procedures) to minimize the volume of
untreated wastewater transmitted to the portion of the
Collection System impacted by the events precipitating the
SSO to surface waters and to minimize overflow volumes;

iv.  A detailed plan of the resources to be used to correct
or repair the condition causing or contributing to the SSO;

v.   A plan to ensure the preparedness, including
responsiveness training of City employees, contractors, and
personnel of other affected agencies necessary for the
effective implementation of the Emergency Response Plan in
the event of a SSO; and

vi.  Identification of overflow locations within the

area served by each Pump Station and those locations at which a SSO is likely to occur first in the event of Pump Station failure for each Pump Station.

vii. The Emergency Response plan shall include station-specific emergency procedures, bypass strategies, and estimated storage capacity (i.e., maximum volume of sewage that can be stored in the event of a Pump Station failure or repair without causing a SSO and estimated time during which sewage can be stored before a SSO will occur). In the event that a repair may cause or lengthen the time of a SSO, the Emergency Response Plan shall provide a procedure for determining when additional storage or pump around will be needed.

c. EPA and ODEQ shall consult with DOI and ODWC on the contents of the Emergency Response Plan. Within sixty (60) days of receipt of EPA and ODEQ's comments on the Emergency Response Plan for any SSOs, the City shall modify the Emergency Response Plan accordingly and submit the revised Emergency Response Plan to EPA and ODEQ for final approval. Upon final approval by EPA and ODEQ (in consultation with DOI and ODWC,) the Emergency Response Plan shall be incorporated into, and become enforceable under, this Consent Decree. Within thirty (30) days of EPA and ODEQ final approval, the City shall implement the plan.

d.  Any dispute with respect to any portion of the
Emergency Response Plan required by this Paragraph shall not
delay the development or implementation of the undisputed
portions of the Emergency Response Plan.

23.    Reporting of Known SSO Events and
       Recordkeeping.

a.  The City shall report to ODEQ and DOI by oral
notification any SSO from any component of the Collection System
to any waters of the United States and Waters of the State of
Oklahoma within twenty-four (24) hours of the time the City first
becomes aware of the SSO.  A written report shall also be
provided to EPA, DOI and ODEQ within five (5) days of the time
the City first becomes aware of the SSO.  Any written report
shall be made to the Compliance Assurance and Enforcement
Division, United States Environmental Protection Agency, Region
VI, and to the Water Quality Division of ODEQ.  The written
report shall contain the following:

i.    Location of the SSO by street address, or any other
      appropriate method (i.e., by latitude and longitude);

ii.   Name of the receiving water, if applicable, including
      via separate storm sewer;

iii.  An estimate of the volume of sewage discharged;

iv.   Description of the sewer system or treatment plant
      component from which the SSO was released (such as

manhole, crack in pipe, pump station wet well or

constructed overflow pipe);

v.   Estimate of the overflow's impact on public health and

to water quality in the receiving water body;

vi.  Cause or suspected cause of the SSO;

vii. Estimated date and time when the overflow began and

stopped or the anticipated time the SSO is expected to

continue;

viii.   Steps taken to respond to the SSO;

ix.  Steps taken to reduce, eliminate, and prevent

reoccurrence of the SSO and a schedule of major milestones

for those steps; and

x.   Report of all notifications to the public and other

agencies or departments, if any.

   b.   The City shall maintain records of the following

information for each SSO from the Collection System in accordance

with Section XII (Information Collection and Retention), below:

i.   The location of the overflow and receiving water, if

any;

ii.  An estimate of the volume of the overflow;

iii. A description of the sewer system component from which

the overflow occurred (e.g., manhole, constructed overflow

pipe, crack in pipe, etc.);

iv.  The estimated date and time when the overflow began and

when it stopped;

v.　The cause or suspected cause of the overflow;

vi.　Response actions taken;

vii. Steps that have been and will be taken to prevent the overflow from recurring and a schedule for those steps including:

> A.　work order records associated with investigation and repair of system problems related to the SSOs; and
>
> B.　documentation of performance and implementation measures; and

viii.　A list and description of complaints from customers or others regarding overflows.

c.　The City shall maintain a copy of any written reports prepared pursuant to this Paragraph in accordance with Section XII (Information Collection and Retention), below.

24.　_Permits_.　Where any compliance obligation required to be met under this Section requires a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.　Defendants may seek relief under the provisions of Section X (Force Majeure) of this Consent Decree for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any

permit required to fulfill such obligation, if Defendants have submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

VI. <u>REVIEW OF SUBMITTALS</u>

25. After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA and ODEQ shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

26. If the submission is approved pursuant to subparagraph (a) of Paragraph 25, the City shall take all actions required by the plan, report, or other item, as approved. If the submission is conditionally approved or approved only in part, pursuant to subparagraphs (b) or (c) of Paragraph 25, the City shall, upon written direction of EPA and ODEQ, take all actions required by the approved plan, report, or other item that EPA and ODEQ determine are technically severable from any disapproved portions, subject to the City's right to dispute the specified conditions or the disapproved portions, under Section XI of this Consent Decree (Dispute Resolution).

27. If the submission is disapproved in whole or in part pursuant to subparagraph (c) or (d) of Paragraph 25, the City shall, within thirty (30) days or such other time as the

Parties agree in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval. If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA and ODEQ may again require the City to correct any deficiencies, in accordance with this Section, subject to the City's right to invoke Dispute Resolution.

28. If EPA and ODEQ fail to notify the City of their approval or disapproval, or otherwise provide comments, within sixty (60) days after receiving the submittal, the completion dates for each milestone in the submittal, once approved, shall be deemed extended by the number of days beyond sixty (60) that EPA and ODEQ took for such approval, disapproval or comment. The work deadlines set forth in Section VI are subject to extension under this paragraph, or upon the written agreement of EPA and ODEQ.

## VII. NATURAL RESOURCE DAMAGES

29. Payment For Federal Natural Resource Damages: Within 30 days after the Effective Date of this Consent Decree, Defendants shall pay the sum of $430,000.00, together with Interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging, for Natural Resource Damages. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the

U.S. Department of Justice in accordance with instructions to be provided to Defendants following lodging of the Consent Decree by the Financial Litigation Unit of the U.S. Attorney's Office for the Eastern District of Oklahoma. Such monies are to be deposited in the NRDAR Fund, referencing: file number 14X5198 (NRDAR), Agency Code INTE, DOJ # 90-5-1-1-07445, the name of the paying party, the Deep Fork Wildlife Refuge in Oklahoma, and the NRDAR case name -- the Okmulgee Sewage Discharge, Okmulgee Co., Ok. Any payments received after 4:00 p.m. Eastern Time shall be credited on the next business day.

30. At the time of payment, Defendants shall simultaneously send written notice of payment, together with a copy of any transmittal documentation, referencing NRDAR account number 14X5198, Agency Code INTE, DOJ # 90-5-1-1-07445, the civil action number, the name of the paying responsible party, the NRDAR case name -- the Okmulgee Sewage Discharge, Okmulgee Co., Ok., and stating that the payment is for Natural Resource Damages with respect to the Deep Fork Wildlife Refuge in Oklahoma, to: the United States in accordance with Section XVI (Notices), and to

Department of the Interior
NBC/Division of Financial Management Services
Branch of Accounting Operations
Mail Stop D-2777
7401 W. Mansfield Avenue
Lakewood, Colorado 80235

Jerry J. Brabander

Field Superviser
Fish & Wildlife Service
Division of Ecological Services
222 South Houston, Suite A
Tulsa, Oklahoma 74127

Department of the Interior
Natural Resource Damage Assessment and Restoration Program
Attn: Restoration Fund Manager
1849 C Street, NW
Mailstop 4449
Washington, D.C. 20204

Suzanne Y. Dudding
Environmental Quality Specialist
US Fish and Wildlife Service
222 S. Houston
Tulsa, OK 74127
Direct line: (918) 382-4521
Main Line: (918) 581-7458 ex 241
Main Fax (918) 581-7467

Martin Steinmetz
Tulsa Field Solicitor Office
United States Department of the Interior
7906 East 33d Street, Suite 100
Tulsa, Oklahoma 74104

## VIII.  REPORTING REQUIREMENTS

31.  Defendants shall submit the following reports:

a.  Within thirty (30) days after the end of each calendar-year quarter (*i.e.*, by April 30, July 31, October 31, and January 31) after lodging of this Consent Decree, until termination of this Decree pursuant to Section XX, Defendants shall submit a quarterly progress report for the preceding quarter that shall include the status of any construction or compliance measures, completion of milestones, and operation and maintenance of the POTW and the Collection System;

-26-

b. If Defendants violate any requirement of this Consent Decree or of any applicable NPDES/OPDES permits, Defendants shall notify the United States and the ODEQ (on behalf of the State of Oklahoma) of such violation and its likely duration in writing within ten (10) working days of the day Defendants first become aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, and/or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendants shall include a statement to that effect in the report. Defendants shall immediately investigate to determine the cause of the violation and then shall submit an amendment to the report, including a full explanation of the cause of the violation, within thirty (30) days of the day Defendants become aware of the cause of the violation. If Defendants seek to invoke force majeure, they shall comply with the requirements of Section X of this Decree.

32. All reports shall be submitted to the persons designated in Section XVI of this Consent Decree (Notices).

33. Each report submitted by Defendants under this Section, including the Certificate of Completion, shall be signed by an official of the submitting party and include the following certification:

I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gather and present the information contained therein. I further certify, based on my inquiry of those individuals immediately responsible for obtaining the information, that I believe that the information is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment.

34. Defendants shall retain all underlying documents from which they have compiled any report or other submission required by this Consent Decree until five years after termination of the Consent Decree.

35. The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required

by the Act or implementing regulations, or by any other federal, state, or local law, regulation, or requirement.

36. Any information provided pursuant to this Consent Decree may be used by Plaintiffs in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## IX. <u>STIPULATED PENALTIES</u>

37. If Defendants fail to pay the civil penalties required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendants shall pay a stipulated penalty of $1,000 per day to the United States and/or to the ODEQ (on behalf of the State of Oklahoma), as applicable, for each day that the payment is late. If Defendants fail to pay the sum for Natural Resource Damages to be paid under Section VII of this Decree when due, then Defendants shall pay a stipulated penalty of $1,000 per day to the United States for each day that the payment is late. Late payment of the civil penalty or Natural Resource Damages shall be made in accordance with Sections IV and VII, above. Stipulated Penalties shall be paid in accordance with this Section. All transmittal correspondence shall state that any such Stipulated Penalty payment is for late payment of the civil penalty or Natural Resource Damages due under this Decree, as applicable, and shall include the identifying information set forth in Sections IV or VII as appropriate.

38. Defendants shall be liable for Stipulated Penalties to the United States and the ODEQ (on behalf of the State of Oklahoma) for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

39. Permit Violations, Unauthorized Discharges, and SSOs.

a. The following stipulated penalties shall accrue per violation per day for noncompliance with any operation and maintenance requirements of its Permit in effect for the facility from the date of lodging through the term of this Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th day |
| $500 | 15th through 30th day |
| $1,000 | 31st day and beyond |

b. The following stipulated penalties shall accrue per violation per parameter for violations of effluent limits contained in the Permit from the date of lodging through the term of this Decree:

| Violation of Each Parameter | Penalty |
|---|---|
| Weekly Average Limits as contained in NPDES Permit | $500 per violation per parameter for the averaging period |
| Monthly Average Limits as contained in NPDES Permit | $1,000 per violation per parameter for the averaging period |

C.   The City shall be liable to the United States and the ODEQ (on behalf of the State of Oklahoma) for stipulated penalties for all SSOs in the following amounts per overflow: $200 for less than 1000 gallons; $500 for 1000 gallons or more. Notwithstanding the foregoing, the City shall not be liable for stipulated penalties for SSOs if all of the following conditions are met:

(i)   The City stopped the SSO(s) as soon as possible;

(ii)   The City is in compliance with the schedules for the Collection System Remedial Program as set forth in Section V and the SSES.

(iii)   The City is in compliance with its Emergency Response Plan as described in Paragraph 22; and

(iv)   The City is in compliance with the Reporting and Recordkeeping requirements of Paragraph 23.

40.   Compliance Milestones.

The following stipulated penalties shall accrue per violation per day for any failure to meet any of the compliance milestones/deadlines identified in Section V:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500.00 | 1st through 14th day |
| $750.00 | 15th through 30th day |
| $1,000.00 | 31st day and beyond |

41. <u>Reporting Requirements</u>. The following stipulated penalties shall accrue per violation per day for any noncompliance with the reporting requirements of Section VIII of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th day |
| $500 | 15th through 30th day |
| $1,000 | 31st day and beyond |

42. Stipulated Penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated Penalties shall accrue simultaneously for separate violations of this Consent Decree. Subject to Paragraph 45, Defendants shall pay any Stipulated Penalty within 30 days of receiving a written demand from either the United States or the ODEQ (on behalf of the State of Oklahoma).

43. The United States or the ODEQ (on behalf of the State of Oklahoma), or both, may seek Stipulated Penalties under

this Section. Where both the United States and the ODEQ (on behalf of the State of Oklahoma) seek Stipulated Penalties for the same violation of this Consent Decree, Defendants shall pay 50% percent of the Stipulated Penalty amount to the United States and 50% percent to the ODEQ (on behalf of the State of Oklahoma). The United States and the ODEQ (on behalf of the State of Oklahoma) cannot both recover 100% of the Stipulated Penalty amount for the same violation.

44. The United States or the ODEQ (on behalf of the State of Oklahoma) may, in the unreviewable exercise of their discretion, reduce or waive Stipulated Penalties otherwise due it [that Plaintiff] under this Consent Decree. Where only one Plaintiff demands Stipulated Penalties for a violation, it shall make that demand on its own behalf, and Defendants shall pay the Stipulated Penalties due for the violation to that Plaintiff. The determination by either the United States or the ODEQ (on behalf of the State of Oklahoma) not to seek Stipulated Penalties, or subsequently to waive or reduce the amount sought, shall not preclude the other from seeking Stipulated Penalties.

45. Stipulated Penalties shall continue to accrue as provided in Paragraph 42 above, during any Dispute Resolution, with Interest on accrued penalties payable and calculated at the rate established by the Secretary of the Treasury, pursuant to 28 U.S.C. § 1961, but need not be paid until the following:

a.  If the dispute is resolved by agreement or by a
decision of EPA/ODEQ (on behalf of the State of Oklahoma) that is
not appealed to the Court, Defendants shall pay accrued penalties
determined to be owing, together with Interest, to the United
States/ODEQ (on behalf of the State of Oklahoma) within 30 days
of the effective date of the agreement or the receipt of
EPA's/ODEQ's written decision or order;

b.  If the dispute is appealed to the Court and the
United States/ODEQ (on behalf of the State of Oklahoma) prevails
in whole or in part, Defendants shall pay all accrued penalties
determined by the Court to be owing, together with interest,
within 60 days of receiving the Court's decision or order, except
as provided in Subparagraph c, below;

c.  If any Party appeals the District Court's decision,
Defendants shall pay all accrued penalties determined to be
owing, together with Interest, within 15 days of receiving the
final non-appealable appellate court decision.

46.  Stipulated penalties owing to the United States
shall, as directed by the United States, be paid by EFT in the
amount due payable to the "U.S. Department of Justice,"
referencing DOJ No. 90-5-1-1-07445 and United States Attorney's
Office file number [_____], and delivered to the office of the
United States Attorney, Eastern District of Oklahoma.  Any
stipulated penalties for which Defendants shall become liable to

the ODEQ (on behalf of the State of Oklahoma) under this Consent

Order shall be paid by check made payable to the Oklahoma

Department of Environmental Quality and noting for deposit in the

Environmental Quality Revolving Fund and delivered to:

Accounts Receivable
Financial and Human Resources Management
Department of Environmental Quality
P.O. Box 2036
Oklahoma City, Oklahoma 73101-2036

47. If Defendants fail to pay Stipulated Penalties

according to the terms of this Consent Decree, Defendants shall

be liable for Interest on such penalties, as provided for in

28 U.S.C. § 1961, accruing as of the date payment became due.

48. Subject to the provisions of Section XIV of this

Consent Decree (Effect of Settlement/Reservation of Rights), the

Stipulated Penalties provided for in this Consent Decree shall be

in addition to any other rights, remedies, or sanctions available

to the United States or the ODEQ (on behalf of the State of

Oklahoma) for Defendants' violation of this Consent Decree or

applicable law. Where a violation of this Consent Decree is also

a violation of the Act, regulations promulgated under the Act,

the NPDES/OPDES Permit, or state law, Defendants shall be allowed

a credit, for any Stipulated Penalties paid, against any

statutory penalties imposed for such violation.

## X.  FORCE MAJEURE

49.  "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the City, its contractors, or any entity controlled by the City that delays the performance of any obligation under this Consent Decree despite the City's best efforts to fulfill the obligation.  "Best efforts" include using best efforts to anticipate any potential force majeure event and to address the effects of any such event (a) as it is occurring and (b) after it has occurred, such that the delay is minimized to the greatest extent possible.  "Force Majeure" does not include the City's financial inability to perform any obligation under this Consent Decree.  "Force Majeure" does not include the failure of CP Kelco, U.S., Inc., (or successor) to treat its effluent at its own treatment facility or the continuing discharge of CP Kelco, U.S., Inc.'s (or successor's) wastewater to the City's POTW for treatment.

50.  The City shall provide notice to the United States and to the ODEQ (on behalf of the State of Oklahoma) orally or by electronic or facsimile transmission as soon as possible, but not later than 72 hours after the time the City first knew of, or by the exercise of best efforts, should have known of, a claimed force majeure event.  The City shall also provide written notice, as provided in Section XVI of this Consent Decree (Notices),

within seven (7) days of the time the City first knew of, or by the exercise of best efforts, should have known of, the event. The notice shall state the anticipated duration of any delay; its cause(s); the City's past and proposed actions to prevent or minimize any delay; a schedule for carrying out those actions; and the City's rationale for attributing any delay to a force majeure event. Failure to give such notice shall preclude the City from asserting any claim of force majeure. The City shall be deemed to know of any circumstance of which the City, its contractors, or any entity controlled by the City knew or, through best efforts, should have known.

51. If the United States and the ODEQ (on behalf of the State of Oklahoma) agree that a force majeure event has occurred, then they may agree to extend the time for the City to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation.

52. If the United States and the ODEQ (on behalf of the State of Oklahoma) do not agree that a force majeure event has occurred, or do not agree to the extension of time sought by the City, the United States/ODEQ (on behalf of the State of Oklahoma), position shall be binding, unless the City invokes Dispute Resolution under Section XI of this Consent Decree. In

any such dispute, the City bears the burden of proving, by a preponderance of the evidence: that each claimed force majeure event is a force majeure event; that the City gave the notice required by this Paragraph; that the force majeure event caused any delay the City claims was attributable to that event; and that the City exercised best efforts to prevent or minimize any delay caused by the event.

## XI.  DISPUTE RESOLUTION

53.  Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, such procedures shall not apply to actions by the United States/ ODEQ (on behalf of the State of Oklahoma) to enforce obligations of the City that have not been disputed in accordance with this Section.

54.  Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of good-faith informal negotiations between the parties to the dispute.  The goal of the informal negotiations shall be to resolve the dispute without further proceedings.  The period for informal negotiations shall not exceed thirty (30) days from the time the dispute arises, unless (a) the United States/ODEQ (on behalf of the State of Oklahoma), in their sole discretion,

determine that a shorter period shall be allowed due to an immediate threat to the environment or (b) all parties to the dispute agree in writing to an extension. The dispute shall be considered to have arisen when the City sends the United States and the ODEQ (on behalf of the State of Oklahoma) a written Notice of Dispute. The Notice of Dispute shall contain a concise statement of the issue or issues in dispute. If informal negotiations result in an agreement between the parties to the dispute, then those parties shall state the agreement in a single document in writing. If informal negotiations do not result in an agreement between the parties to the dispute, then the United States/ODEQ (on behalf of the State of Oklahoma), shall provide to the City in writing an opinion on the disputed issue or issues.

55. a. If the parties to the dispute cannot resolve it by informal dispute resolution, then the position advanced by the agency that issued the disputed decision shall be considered binding unless, within fifteen (15) days after the issuance and receipt of a written opinion under Paragraph 54, by the agency that issued the disputed decision, the City invokes the formal dispute resolution procedures of this Section by serving on the agency that issued the disputed decision a written Statement of Position on the matter in dispute. In its Statement of Position, the City shall describe the subject of the dispute,

state its position on the dispute, and set forth in detail the basis for that position. The Statement of Position shall include the factual data, analysis, and opinions supporting the City's position and the supporting documentation relied upon by the City. The Statement of Position shall specify the City's position as to whether formal dispute resolution should proceed under Paragraph 56 or Paragraph 57, below.

b.    Within fifteen (15) days after receipt of the City's Statement of Position, the United States/ODEQ (on behalf of the State of Oklahoma) will serve on the City a Statement of Position. In the Statement of Position, the United States/ODEQ (on behalf of the State of Oklahoma) shall describe the subject of the dispute, state its position on the dispute, and set forth in detail the basis for that position. The Statement of Position shall include the factual data, analysis, and opinions supporting the position of the United States/ODEQ (on behalf of the State of Oklahoma) and the supporting documentation relied upon by it. The Statement of Position shall specify the position of the United States/ODEQ (on behalf of the State of Oklahoma) as to whether formal dispute resolution should proceed under Paragraphs 56 or 57, below.

c.    Within seven (7) days after receipt of the Statement of Position by the agency that issued the disputed decision, the City may submit a Reply to the Statement of

Position of the United States/ODEQ (on behalf of the State of Oklahoma).

d.    If there is disagreement between the parties to the dispute as to whether dispute resolution should proceed under Paragraph 56 or 57, below, the parties to the dispute shall follow the procedures set forth in the Paragraph determined to be applicable by the agency that issued the disputed decision. However, after a decision is issued under subparagraph 56.b. or 57.a., if the City appeals the dispute to the Court for resolution under subparagraph 56.c. or 57.a., the Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 56 and 57.

56.    The formal dispute resolution procedures set forth in this Paragraph shall apply to disputes pertaining to matters that are accorded review on the administrative record under applicable principles of administrative law.  The provisions of this Paragraph shall apply, without limitation, to (1) disputes regarding items requiring approval by EPA and ODEQ under this Consent Decree including, but not limited to, disputes regarding the adequacy or appropriateness of and procedures to implement Work, and (2) disputes regarding the selection, evaluation, implementation, performance, or adequacy of any Work.

a.    An administrative record of the dispute shall be maintained by the agency that issued the disputed decision and

shall contain all Statements of Position submitted pursuant to Paragraph 54, above, including supporting documentation, submitted pursuant to this Section. Where appropriate, the agency that issued the disputed decision may allow submittal of supplemental statements of position by the parties to the dispute.

   b.   In a case where the disputed decision was issued by EPA, the Director of the Compliance Assurance and Enforcement Division for EPA Region VI will issue a final administrative decision resolving the dispute based on the administrative record described in Subparagraph 56.a., above. In a case where the disputed decision was issued by ODEQ, the Executive Director of ODEQ will issue a final administrative decision resolving the dispute based on the administrative record described in Subparagraph 56.a., above. This decision shall be binding upon the City subject only to the right to seek judicial review pursuant to Subparagraphs 56.c. and d., below.

   c.   Any administrative decision pursuant to Subparagraph 56.b., above, shall be reviewable by the Court, provided that a motion for judicial review of the decision is filed by the City with the Court and served on all Parties as provided for in Section XVI (Notices) within twenty (20) days of receipt of the decision. The motion shall include a description of the matter in dispute, the efforts made to resolve it, the

relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States/ODEQ (on behalf of the State of Oklahoma) may file a response to the City's motion.

d.    In proceedings on any dispute governed by this Paragraph, the City shall have the burden of demonstrating that the decision under Subparagraph 56.b., above, is arbitrary and capricious or otherwise not in accordance with law. Judicial review of decisions under Subparagraph 56.b., above, shall be limited to the administrative record compiled pursuant to Subparagraph 56.a., above.

57.    Formal dispute resolution for disputes that do not pertain to (1) the adequacy or appropriateness of and procedures to implement Work; (2) the selection, evaluation, implementation, performance, or adequacy of any Work; or (3) that are not otherwise accorded review on the administrative record under applicable principles of administrative law shall be governed by this Paragraph. The provisions of this Paragraph shall apply, without limitation, to disputes arising under Section X (Force Majeure) regarding whether any failure by the City to meet a deadline was caused by a force majeure event.

a.    In a case where the disputed decision was issued by EPA, the Director of the Compliance Assurance and Enforcement Division, EPA Region VI will issue a final decision resolving the

-43-

dispute. In a case where the disputed decision was issued by
ODEQ, the Executive Director of ODEQ will issue a final decision
resolving the dispute. In a case where the disputed decision was
issued by DOI, the Authorized Official for the NRDAR case, or a
delegatee of the Authorized Official, will issue a final decision
resolving the dispute. Such decision shall be binding on the
City unless, within twenty (20) days of receipt of the decision,
the City files with the Court and serves on the other Parties, as
provided for in Section XVI (Notices), a motion for judicial
review of the decision(s) setting forth the matter in dispute,
the efforts made to resolve it, the relief requested, and the
schedule, if any, within which the dispute must be resolved to
ensure orderly implementation of this Consent Decree. The United
States/ODEQ (on behalf of the State of Oklahoma), may file a
response to the City's motion.

b. Judicial review of any dispute governed by this
Paragraph shall be governed by applicable principles of law.

58. In the event of any re-organization of EPA which
affects the Compliance Assurance and Enforcement Division for EPA
Region VI and/or any substantial change in the responsibilities
of the Director of the Compliance Assurance and Enforcement
Division for EPA Region VI, EPA may notify the City that the
authorities and responsibilities of the Director of the

Compliance Assurance and Enforcement Division for EPA Region VI will be transferred to an official specified in the notice.

59. Invocation of the dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the City under this Consent Decree not directly in dispute, unless EPA and ODEQ (and/or DOI, the ODWC, the Oklahoma Secretary of the Environment, as applicable) agree otherwise or the Court so orders or directs.

XII. <u>INFORMATION COLLECTION AND RETENTION</u>

60. The United States, the ODEQ (on behalf of the State of Oklahoma), and their representatives, including attorneys, contractors, and consultants, shall have the right of entry to the POTW and any part of the Collection System covered by this Consent Decree, at all reasonable times, upon presentation of credentials to:

a. monitor the progress of activities required under this Consent Decree;

b. verify any data or information submitted to the United States or the ODEQ (on behalf of the State of Oklahoma) in accordance with the terms of this Consent Decree;

c. obtain samples and, upon request, splits of any samples taken by the City or its representative, contractors, or consultants; and

d.  assess the City's compliance with this Consent
Decree.

61.  Upon request, the City shall allow split or
duplicate samples to be taken by EPA and ODEQ or their authorized
representatives.  Upon request, EPA and ODEQ shall allow the City
to take split or duplicate samples of any samples they take.

62.  Until five (5) years after the termination of this
Consent Decree, the City shall retain, and shall instruct its
contractors and agents to preserve, all non-identical copies of
all records and documents (including records or documents in
electronic form) now in its or its contractors' or agents'
possession or control, or that come into its or its contractors'
or agents' possession or control, and that relate in any manner
to the City's performance of its obligations under this Consent
Decree.  This record retention requirement shall apply regardless
of any corporate document-retention policy to the contrary.

63.  At the conclusion of the document-retention period
provided in the preceding Paragraph, the City shall notify the
United States and the ODEQ (on behalf of the State of Oklahoma)
at least ninety (90) days prior to the destruction of any records
or documents subject to the requirements of the preceding
Paragraph, and, upon request by the United States or ODEQ (on
behalf of the State of Oklahoma), the City shall deliver any such
records or documents to EPA or ODEQ.  The City may assert that

certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If the City asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by the City. However, no documents, reports, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged.

64. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or ODEQ (on behalf of the State of Oklahoma), pursuant to applicable federal or state laws, regulations, or permits.

XIII. <u>FAILURE OF COMPLIANCE</u>

65. Plaintiffs do not, by consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, regulations enacted pursuant to the Act, or applicable state laws and regulations.

Notwithstanding the United States' or the ODEQ's (on behalf of the State of Oklahoma) review and approval of any documents submitted to it by Defendants pursuant to this Consent Decree, Defendants shall remain solely responsible for compliance with the terms of the Act and this Consent Decree. Application for construction grants, State Revolving Loan Funds, or any other grants or loans, or other delays caused by inadequate facility planning or plans and specifications on the part of Defendants shall not be cause for extension of any required compliance date in this Consent Decree.

## XIV.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

66.  This Consent Decree resolves the civil claims of the United States and the State of Oklahoma, acting *ex relatione* through the ODEQ, against Defendants for violations of the NPDES and OPDES permits, Section 301 of the Act, 33 U.S.C. § 1311, and Title 27A O.S.§§ 1-2-101, 2-6-105, and 2-6-201 et seq. and Title 29 O.S. § 7-401a, as alleged in the Complaint filed in this action, through the date of lodging.  This Consent Decree also resolves the civil claims of the United States, and the State of Oklahoma, acting *ex relatione* through the Oklahoma Secretary of the Environment and the ODWC against Defendants for Natural Resource Damages, for injury to habitat and fish, for injury to the resources under their jurisdiction in the Deep Fork River, and for injury to the Deep Fork National Wildlife Refuge, all

caused by the City's unpermitted discharge(s) in August-September 2000, pursuant to Section 311(f) of the Act, 33 U.S.C. § 1321(f), as alleged in the Complaint.

67. <u>CERCLA</u>. In consideration of the payment to DOI for Natural Resource Damages that will be made by Defendants under the terms of this Consent Decree, and except as specifically provided in Paragraph 68, the United States covenants not to sue or take administrative action against Defendants pursuant to 42 U.S.C. § 9607(a)(4)(C) and (f)(1,) to recover Natural Resource Damages due to the fish kill and related injuries to natural resources as described in Paragraph 66 above. Except as specifically provided in Paragraph 68, the Oklahoma Secretary of the Environment covenants not to sue or take administrative action against Defendants pursuant to 42 U.S.C. § 9607(a)(4)(C) and (f)(1,) to recover Natural Resource Damages due to the fish kill and related injuries to natural resources as described in Paragraph 66 above. These covenants not to sue shall take effect upon the date of entry of this Consent Decree by the Court, except that the covenant not to sue shall be conditioned upon the payment of costs required by Section VII. These covenants not to sue extend only to Defendants and do not extend to any other person.

68. <u>CERCLA</u>. Notwithstanding any other provision of this Consent Decree, the United States and the State of Oklahoma

reserve, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action under Section 107 of CERCLA, 42 U.S.C. § 9607, or to issue an administrative order seeking to compel Defendants to reimburse the United States or the State of Oklahoma for additional Natural Resource Damages, if:

(i)   conditions, including the release of hazardous substances at or from the Site, that previously were unknown to EPA, DOI, the ODEQ, the ODWC, or the Oklahoma Secretary of the Environment, are discovered after the Date of Lodging of this Consent Decree and these conditions cause or contribute to new or additional injuries to, losses of, or destruction of natural resources, or new or additional service losses;

(ii)   information about the release of hazardous substances at or from the Site that previously was unknown to EPA, DOI, the ODEQ, the ODWC, or the Oklahoma Secretary of the Environment, is received, in whole or in part, after the Date of Lodging of this Consent Decree, and this information together with any other relevant information indicates that there are new or additional injuries to, losses of, or destruction of natural resources, or new or additional service losses;

For purposes of this provision, the information and conditions known to EPA, DOI, the ODEQ, the ODWC, or the Oklahoma Secretary of the Environment, shall include only the information and conditions known to EPA, DOI, the ODEQ, the ODWC, or the Oklahoma Secretary of the Environment, as of October 1, 2005.

69. <u>CERCLA.</u> The Parties agree, and by entering into this Consent Decree this Court finds, that Defendants are entitled, as of the Date of Entry of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for the Natural Resource Damages related to the unpermitted discharge(s) in August-September 2000, subject to the limitations in Paragraphs 67-68.

70. <u>CERCLA.</u> Defendants hereby covenant not to sue and agrees not to assert any claims or causes of action against Plaintiffs for any claims arising from or relating to Natural Resource Damages resulting or allegedly resulting from the release of hazardous substances at or from the facility in August-September 2000, pursuant to any Federal, state, or common law, including, but not limited to any direct or indirect claim for reimbursement for Natural Resource Damages from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through Sections 107, 111, 112, and 113 of CERCLA, 42 U.S.C. §§ 9607, 9611, 9612, and 9613, or any other

provision of state or Federal law. Provided, however, that if the United States or the State of Oklahoma invokes Paragraph 68 reopeners and seeks additional Natural Resource Damages, then Defendants reserve their claims and defenses with respect to the additional Natural Resource Damages.

71. Plaintiffs reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated herein. This Consent Decree shall not be construed to prevent or limit the rights of Plaintiffs to obtain penalties, Natural Resource Damages, or injunctive relief under the Act, CERCLA, or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified herein. This Consent Decree is without prejudice to all rights against Defendants with respect to all matters other than those civil claims expressly specified in Paragraphs 66-67. Plaintiffs further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendants' facility, whether related to the violations addressed in this Consent Decree or otherwise.

72. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendants are responsible for achieving

and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to said laws, regulations, or permits. Plaintiffs do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, regulations, the NPDES/OPDES permit, or state law.

73. This Consent Decree does not limit or affect the rights of Defendants or of Plaintiffs against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

74. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

XV. COSTS

75. The Parties shall each bear their own costs of litigation of this action, including attorneys fees, except that Plaintiffs shall be entitled to collect the costs (including attorney's fees) incurred in any action necessary to collect any portion of the civil penalties, Natural Resource Damages payment, or stipulated penalties due but not paid by Defendants.

XVI.   <u>NOTICES</u>

76.   Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

<u>To the United States</u>:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-1-1-07648.

and

Director, Compliance Assurance and Enforcement Division
U.S. Environmental Protection Agency
Region VI
1445 Ross Ave.
Mail Code (6EN)
Dallas, Texas 75202

and

Deputy Regional Counsel, Enforcement
U.S. Environmental Protection Agency
Region VI
1445 Ross Ave.
Dallas, Texas 75202

and

Suzanne Y. Dudding
Environmental Quality Specialist
US Fish and Wildlife Service
222 S. Houston
Tulsa, OK 74127
Direct line: (918) 382-4521
Main Line: (918) 581-7458 ex 241
Main Fax (918) 581-7467

and

Martin Steinmetz
Tulsa Field Solicitor Office
United States Department of the Interior
7906 East 33d Street, Suite 100
Tulsa, Oklahoma 74104

**To the State of Oklahoma, acting *ex relatione* through the ODWC and the Oklahoma Secretary of the Environment:**

Ellen Phillips
Assistant Attorney General
Environmental Protection Unit
4545 N. Lincoln Blvd., Suite 260
Oklahoma City, OK 73105

**To the ODEQ:**

Division Director
Water Quality Division
Oklahoma Department of Environmental Quality
P.O. Box 1677
Oklahoma City, OK 73101-1677

**To Defendants:**

City Manager
City of Okmulgee
P.O. Box 250
Okmulgee, OK 74447

City Clerk
City of Okmulgee
P.O. Box 250
Okmulgee, OK 74447

77. Notices submitted pursuant to this Section shall be deemed effective upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII.   EFFECTIVE DATE

78.   The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

## XVIII.   RETENTION OF JURISDICTION

79.   The Court shall retain jurisdiction of this case until termination of this Consent Decree, for the purpose of enabling any of the Parties to apply to the Court for such further order, direction, or relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XII of this Decree (Dispute Resolution).

## XIX.   MODIFICATION

80.   The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to any term of this Decree, it shall be effective only upon approval by the Court.   The terms and schedules contained in Appendices *[A-B]* of this Decree may be modified upon written agreement of the Parties without Court approval, unless any such modification effects a material change to the terms of this Consent Decree or materially affects Defendants' ability to meet the objectives of this Decree.

## XX. TERMINATION

81. After Defendants have (a) completed the requirements of this Consent Decree, including the wastewater treatment plant and sanitary sewer improvements pursuant to Section V and payment of the civil penalty and Natural Resources Damages, and any accrued stipulated penalties as required by this Consent Decree, and (b) maintained satisfactory compliance with the requirements of the Act, all applicable state laws and regulations, its NPDES/OPDES Permit, and this Consent Decree for a period of 12 months after completion of the improvements undertaken pursuant to Section V, then Defendants may serve upon Plaintiffs a "Motion for Termination of Consent Decree" ("Motion"), with supporting documentation demonstrating that Defendants have successfully completed all requirements of this Decree and that all other requisite conditions for termination of the Decree have been satisfied.

82. Following Plaintiffs' receipt of Defendants' Motion, the Parties shall schedule one or more conferences (which may be by telephone) to discuss the Motion and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements of the Consent Decree and whether all other requisite conditions for termination of the Decree have been satisfied. Such period of consultation

shall continue for no less than 30 days following receipt of Defendants' Motion.

83. If, following the consultation period provided for by the preceding Paragraph, the Parties cannot come to agreement as to whether Defendants have satisfactorily complied with the requirements of the Consent Decree, or whether all other requisite conditions for termination of the Decree have been satisfied, Defendants may file its Motion with the Court.

84. Plaintiffs shall have the right to oppose Defendants' Motion and to seek an extension of the Decree. If some or all Plaintiffs oppose termination of the Decree, Defendants shall have the burden of proof by clear and convincing evidence that Defendants have satisfactorily complied with the requirements of the Decree and that all other requisite conditions for termination of the Decree have been satisfied.

85. If, following the consultation period provided for by Paragraph 82, above, the Parties agree that Defendants have satisfactorily complied with the requirements of the Decree and that all other requisite conditions for termination of the Decree have been satisfied, they shall file with the Court an appropriate pleading so notifying the Court and requesting termination of the Decree.

## XXI. CONTINGENT LIABILITY OF THE STATE OF OKLAHOMA

86. Pursuant to Section 309(e) of the Act, 33 U.S.C. § 1319(e), the United States specifically reserves its claims against the State of Oklahoma, and the State of Oklahoma reserves any and all defenses.

## XXII. PUBLIC PARTICIPATION

87. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7. Plaintiffs reserve the right to withdraw or withhold their consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants consent to entry of this Consent Decree without further notice.

## XXIII. SIGNATORIES/SERVICE

88. Each undersigned representative of Defendants, the State of Oklahoma, acting *ex relatione* through the Oklahoma Secretary of the Environment, the ODEQ, and the ODWC, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

89. This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

90. Defendants hereby agree not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless one or more Plaintiffs has notified Defendants in writing that it no longer supports entry of the Decree.

91. Defendants hereby agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXIV.   INTEGRATION/APPENDICES

92. This Consent Decree, together with its Appendices, constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written.  Other than the Appendices, which are attached to and incorporated in this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.  In the event of conflict

between this Consent Decree and any Appendix, the Consent Decree shall control.

## XXV. FINAL JUDGMENT

93. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the United States, the State of Oklahoma, acting *ex relatione* through the Oklahoma Secretary of the Environment, the ODEQ, and the Oklahoma Department of Wildlife Conservation, and Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXVI. APPENDICES

94. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the November 2005 revised Addendum No. 3 to the Comprehensive Evaluation Wastewater Treatment Plant, Okmulgee Public Works Authority, Okmulgee, Oklahoma;

"Appendix B" is the Supplemental Sewer System Evaluation Survey ("SSES") submitted by Defendants to ODEQ and approved by ODEQ on March 4, 2002.


DATED AND ENTERED this <u>14th</u> day of <u>April</u>, 2006.


Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma

FOR PLAINTIFF UNITED STATES OF AMERICA:


DATED: _12/08/05_                   _Sue Ellen Wooldridge_
                                    SUE ELLEN WOOLDRIDGE
                                    Assistant Attorney General
                                    Environment and Natural Resources
                                         Division


DATED: _11/29/05_                   _Kenneth G. Long_
                                    KENNETH G. LONG
                                    Senior Attorney
                                    Environmental Enforcement Section
                                    Environment & Natural Resources Division
                                    U.S. Department of Justice
                                    Ben Franklin Station
                                    P.O. Box 7611
                                    Washington, D.C. 20044-7611
                                    (202) 514-2840

FOR PLAINTIFF UNITED STATES OF AMERICA:

SHELDON J. SPERLING
UNITED STATES ATTORNEY
EASTERN DISTRICT OF OKLAHOMA


SUSAN BRANDON
ASSISTANT UNITED STATES ATTORNEY
1200 West Okmulgee
Muskogee, Oklahoma 74401
918-684-5112

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY - REGION
VI:


DATED: **12/9/05**
_____
RICHARD GREENE
Regional Administrator
United States Environmental
    Protection Agency
Region VI
1445 Ross Avenue
Dallas, Texas 75202-2733



DATED: **12/13/05**
_____
EFREN ORDOÑEZ, ESQ.
Assist. Regional Counsel (6RC - EW)
United States Environmental
    Protection Agency
Region VI
1445 Ross Avenue
Dallas, Texas 75202-2733

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY - OFFICE OF
ENFORCEMENT AND COMPLIANCE ASSURANCE

DATED: 12·28·05 _____     _Walker B. Smith_____
                                WALKER B. SMITH
                                DIRECTOR
                                Office of Civil Enforcement (2241A)
                                United States Environmental
                                    Protection Agency
                                1200 Pennsylvania Avenue, N.W.
                                Washington, DC 20460

FOR THE OKLAHOMA DEPARTMENT OF ENVIRONMENTAL QUALITY

DATED: 12-1-05

STEVEN A. THOMPSON
Executive Director
Oklahoma Department of Environmental
    Quality
P.O. Box 1677
Oklahoma City, Oklahoma 73101-1677

DATED: 12-1-05

DONALD D. MAISCH
Supervising Attorney, Water Quality
Division
Office of the General Counsel
P.O. Box 1677
Oklahoma City, Oklahoma 73101-1677

FOR THE OKLAHOMA DEPARTMENT OF WILDLIFE CONSERVATION, AND THE
OKLAHOMA SECRETARY OF ENVIRONMENT


DATED: 12/1/2005

MILES TOLBERT
Oklahoma Secretary of the
Environment
3800 Classen Blvd.
Oklahoma City, Oklahoma 73118


DATED: 12/1/05

GREG DUFFY
Director
Oklahoma Department of Wildlife
Conservation
1801 North Lincoln Blvd.
P.O. Box 53465
Oklahoma City, Oklahoma 73152


DATED: 12/1/05

ELLEN PHILLIPS OBA#15852
Assistant Attorney General
Office of the Attorney General
Environmental Protection Unit
4545 N. Lincoln Blvd., Suite 260
Oklahoma City, Oklahoma  73105-3498
Telephone:  (405) 521-4274

FOR DEFENDANT CITY Of OKMULGEE, OKLAHOMA:


Date: 11-8-05                    _____
                                 HONORABLE EVERETT HORN
                                 Mayor, City of Okmulgee


Date: 11-8-05                    _____
                                 RONNIA ANDREWS
                                 Clerk, City of Okmulgee


SEAL

FOR DEFENDANT OKMULGEE PUBLIC WORKS AUTHORITY:


Date: 11-8-05                          _____
                                       EVERETT HORN
                                       Chairman



Date: 11-8-05                          _____
                                       RONNIA ANDREWS
                                       Secretary